May I please the court, Felicia Ellsworth, CJA counsel for appellant Sandra Rijo. May I reserve two minutes of my time for rebuttal, please. Thank you. How much? Two minutes, please. Yes. Thank you. Mr. Rijo's conviction must be vacated for no fewer than three reasons. First, the government failed to disclose a material error in an investigative report in violation of its obligations under Brady v. Maryland. Mr. Rijo's counsel relied on the error in this report in crafting his theory of the defense and explicitly referenced it during opening statements. Only after Mr. Rijo's counsel delivered his opening did the government notify Mr. Rijo that the report was inaccurate, undermining the defense's credibility and trial strategy. This disclosure occurred far too late to allow Mr. Rijo's counsel to recalibrate his defense to incorporate The trial judge found directly to the contrary on that. The trial judge found that first, the mistake should have been obvious to trial counsel. Second, there was plenty of time to pursue an alternate strategy of saying this is a case of government incompetence in the investigation and this mistake is yet another aspect of it. You didn't ask for a continuance. You didn't ask for a new trial. You trial counsel. I realize appellate counsel is different. And it would have been quite possible on cross-examination of the agent whose interview notes apparently were mistranscribed to call out all of this. So those are findings by the trial court. Your Honor, with respect to the question of what trial counsel sought, trial counsel did seek a mistrial and also sought a severance from the co-defendant, which would in effect be Didn't ask for a continuance. I believe the request was for the trial to continue against co-defendant and to have a continuance as to Mr. Rijo, but not in so many words. It's a severance motion. As to the question of whether trial counsel should have been aware that this was in fact an error, there are a few different arguments as to why we think that was an incorrect ruling by the district court. The first is the Jones Act violation that we've raised, the notes on which Trial counsel is local counsel in Puerto Rico. You're not going to claim he doesn't know Spanish. No, Your Honor, but I believe it is. So we have the interview notes and then we have the, which got transformed into a formal document. Yes? Correct. Okay. And from the point of view of the trial judge, anyone who bothered to read the interview notes would have seen immediately that there was a problem with the investigative report that was filed along with it. And again, I would raise that. How can that be a clear error? From the point of view of the case law, I believe it's an abuse of discretion standard here. It would have to be a clear and convincing evidence standard to allow the district court to make the finding it made. We think the Jones Act violation here is clear. Whether there's prejudice is, of course, for this court to determine. We do think that under the relevant case law to show prejudice, we need to show that this court would need to rely on the untranslated document in order to decide an issue on appeal. And again, I think that goes to the very heart of why the district court found that this Brady material was not withheld. So again, I think the Jones Act violation here is fairly clear and it's a question of prejudice. As to the prejudice to Mr. Reho from this violation, we have a situation where defense counsel made a promise in his opening statement. And then based on a subsequent disclosure from the government that changed the underlying factual underpinnings of that promise, was not able to make good on that promise to the jury. And this court has been clear that when counsel makes a promise in opening statements that he then doesn't deliver on, that that does often result in prejudice to the defendant. You know, it struck me that the mistake could have been milked by the defense, far from showing prejudice. You could say something like, members of the jury, I told you in the opening that the agent had three inconsistent views of my defendant's role in this. Well, I've been told that that was a mistake, but it was the government's mistake. I still don't see how he was harmed in any way. Again, Your Honor, I think the case law is fairly clear that... Yes, the case law, but let's look at the facts here. The mistake was that the report suggested he wasn't just on the ground being a lookout and a manual laborer to carry the drugs off the beach onto the cars to bring them into the city. The mistake was that he was said to have been on the boat, right? That's certainly a mistaken question. Moving on to the question of Mr. Reho's role in the offense, another one of the arguments we've raised on appeal that I do want to make sure to reach today is the misstatements during closing argument in terms of Mr. Reho's role in the offense. What's the status of the record? The status of the record is this, Your Honor. The government three weeks or four weeks ago made a motion in the district court seeking to supplement the record on appeal to include the corrected transcript. There was mention made in that motion to the fact that Mr. Reho had filed a motion to strike in this court, but no actual mention of the fact that Mr. Reho disputes this change in the transcript. Several hours later, the district court granted that motion and certified the record on appeal. We have moved for reconsideration. It's not been ruled upon, which is why we raised it in a supplemental brief to this court. So can we go ahead and decide the issue without having been decided by the district court? I believe the district court has decided pursuant to a motion under Rule 10E from the government, the district court did certify the record. So I think it's for this court now to decide whether that certification was an abuse of discretion. I believe that's the posture in which we find ourselves. Are you asking us to wait until the district court rejects your motion for reconsideration? Because that's what's going to happen. I believe the district court will reject our motion, which is why we wanted to bring it to this court. I don't understand this. There's a motion for reconsideration pending. The question is do we go ahead without it having been decided or not? I don't know when. The motion for reconsideration was filed two weeks ago. We have no sense on the timeline. Certainly if it's decided, we'll bring that immediately to the panel's attention. I wouldn't presume to say how this court would want to handle that. Assuming the district court will act on the motion, that would provide a fuller record on which the court could decide this issue. As far as the record that eventually, whether it waits or not, this court will be confronted with, the only information that the government presented to the district court in support of its Rule 10E motion to certify this changed transcript was an email attachment or an email with photographs attached from the court reporter. So we'd suggest that there are several reasons to think that the original transcript in which my client's name is incorrectly included in the closing argument is actually correct or should be treated as such by the court. The first is that that was a certified transcript filed by the court reporter. The second is that the government did not object to that certified transcript until, including after the 90 days for redaction review had passed. And the third is that, as we've raised in several points throughout our briefing, including on the Brady violation that we were just discussing, there were several places during this trial when Mr. Reho's name was incorrectly used or when Mr. Reho was incorrectly placed on this boat that he was never on and that the evidence couldn't support. So there's good reason to think that a mistake may well have been made. Inadvertently, I'm sure, as to Mr. Reho's role. Isn't it the situation that the government, after you raised the issue of the transcript, went back to the court reporter and said, we think you made a mistake? The court reporter then referred to her tapes or whatever and certified that she had, in fact, made a mistake. However, that hadn't gone through the district court. You pointed out that under 10E, it should have gone to the district court, at which point the government, waking up, goes to the district court and the district court allows the change in the certification. The district court heard the trial. The district court had some sort of memory of what happened at trial. And you then go back for reconsideration because you don't think that the correction was correct. But what basis do you have to say the correction wasn't correct? A few points I would raise, Your Honor. The first is that the court reporter's certification of the second version of the transcript doesn't address specifically this point. It simply changed the transcript and has a certification on it. Yes, but that's the record before us right now. Correct. And the government has not presented any sort of affidavit or other kind of competent evidence from the court reporter to suggest that she, in fact, reviewed her notes, that they were the unaltered notes from the trial. That she lied in the certification she provided? Not at all, but that the stenographic notes were kept in a manner such that they are consistent with either, were unaltered or otherwise could be verified. The Court Reporters Act, which again we've raised in our papers here, does require that these notes be filed with the district court clerk. You know, trial counsel had just been burned on this issue of identity and whether the client, his client, had been on the boat. Wouldn't he have reacted at the time if the government had put him back on the boat again? Wouldn't he? I don't think this court is in a position to say that. I'm certainly not. One would have hoped that if the error had been made an objection would have been made, but I think the transcript and the record as it reaches this court is that there are many confusions about Mr. Reho's role in the offense that permeate the trial. Some of them are objected to and some aren't. I would note that in the court's rule... Are you going to argue disparity of sentences at all or are you submitting just on the brief? I see I'm well over my time now. Take two minutes. In many ways it is the most serious issue in the case. So there are two arguments that we would make as to sentencing. The first is a procedural unreasonableness, which is that after the district court judge has found a disparity in sentences between the co-defendants, similarly situated co-defendants who plead guilty in Mr. Reho, she then proceeds to impose a top-of-the-guidelines range sentence on Mr. Reho with about two paragraphs I would say of reasoning for that. We think that's an inadequately framed sentence. He threatened a witness and from the trial court's point of view he continued to lie. The threat that the trial court found sufficient for purposes of enhancing the sentence, I would submit that that's taken into account in the two-level enhancement that the district court did impose in calculating the guidelines range. There's no argument as to the guidelines range calculation. In terms of the district court's assessment of Mr. Reho's posture my client maintains his innocence. He maintains it at the sentencing hearing. He maintains it to this day. I agree that the district court certainly would have been well within her rights, and certainly this is what she did, to not give Mr. Reho an acceptance of responsibility reduction after trial, which is sometimes available. Certainly he was not accepting responsibility. But I don't believe that the fact that he continues to maintain his innocence, even in the face of a jury verdict, is a basis for penalizing him. And I think more importantly, the disparity between the similarly situated co-defendants would be co-defendants who did not have firearms charge or conviction, all of whom received 70-month sentences. All of whom pled guilty. All of whom pled guilty. And did they all cooperate with the government? In terms of testifying, Mr. Altagracia and Mr. Fuhrman were the two who cooperated. I don't have that information. It's not available to me. It's all sealed. We have put the judgments in and the plea agreements in, but I don't have sort of as far as whether there was actual cooperation. Okay. Thank you, Counsel. Thank you. Good morning, Your Honors. Assistant United States Attorney Hector Ramirez, on behalf of the United States of America, we are ready to proceed. May it please the Court. Perhaps you'd start with Judge Torea's question about sentencing disparity. Yes, Your Honor. And I will address that. I believe there was no sentencing disparities. We cited case law in our brief that the sentencing disparity standard is viewed nationwide. However, even when viewed in the context of this specific case and the other defendants, the only difference in the sentencing guideline calculations that Mr. Rijo received in relation to the other defendants that got 70 months was the fact that Mr. Rijo did not have the three-point reduction for acceptance of responsibility. The others did. That Mr. Rijo did not do the safety valve. The others did. And that Mr. Rijo got the two-level increase for obstruction of justice for the threat, which the others didn't have. He did receive the same reduction for minor role participation that the judge imposed on the other ones. So this is a sentencing guideline calculation that had he accepted responsibility, had he not threatened the witness... Had he not gone to trial? Well, no, Your Honor, because he did go to trial, but that is not the basis of the Court to determine that... There is a huge disparity here between somebody who is a minor participant and including the leaders and including people that were convicted or admitted to having weapons which he did not have. To me, that's the way it looks. But what happens, Your Honor, is that this individual, the government objected to the fact that he received a minor participation because the evidence at trial showed otherwise. He was in charge of looking out for the police to go into the beach. Yes, Your Honor, but he was entrusted for the safety of the people that were at the beach unloading the drugs. He was the person that was going to call to be aware. He was a person that was given trust in that organization to take care of that matter. If he had gotten the three-point reduction and the safety valve, what would the effect have been on the guidelines range? It would have reduced the guidelines range, Your Honor. To what? To what? Both counsel agree on that and submit a letter, a 28-J letter to the Court afterwards. Very well, Your Honor. Within one week, please. Very well. If I may continue to other errors pointed out, the errors pointed out by the appellant are the misconstruction of the evidence and the events that took place at trial. First of all, there were no misstatements in the closing argument. I was the trial counsel for the government, and I did not mention Sandy Rijo in that closing argument. I clearly mentioned Sandy Navarro. He was another defendant in the case. As soon as I read the brief and the transcript, I noticed a mistake and I called the clerk's office to hear the recordings because we were not about to answer a brief to this Honorable Court without even corroborating what our thoughts were that there was a mistake. We were directed to contact the court reporter because they custody both the recordings and the transcripts, and there were no audios, but the court reporter indicated that she would review her notes and that she would let us know if there was any correction to be made, and in fact, there was a correction to be made. The email that the trial counsel for Apollon mentioned today is an email addressed from the court reporter through their trial team to the Apollon's counsel, fully explaining how this mistake happened and where this mistake happened. So I think the transcript as stands is the correct transcript. It's what transpired at trial. Why didn't your office use the proper procedure and go to the district court and say the transcript needed correction? Why did you engage in self-help? Because initially I wanted to listen to the transcript to be able to properly proffer that to the court, and I was informed by the clerk's office that I needed to make arrangements with the court reporter. Now when there was no audio, the court reporter indicated that she had her stenographic notes, but I would not be able to understand those, so it was up to  me to submit a corrected transcript. Without going to the district court? It seems to me it would be a good idea if your office took a good look at the rule and tried to ensure that its procedures were adhered to. We intended to comply, Your Honor. The transcript was already  as is and is appropriate and correct to what transpired at trial. In relation, Your Honor, to the Jones Act violation that is alleged as to the rough notes, there is no Jones Act violation because the trial court, the judge, read the Spanish portions of the transcript for the record, and everybody agreed and nobody objected to that, so this Honorable Court could very well take that as a stipulation of the parties. There was no Brady violation, Your Honor, because we provided all DA6 reports. We provided the rough notes. If there is a document that a defense counsel would like to have, it's the rough notes. Here's what bothers me about what the government did. The defense counsel gets up and says, I'm going to make three points in the opening, and so the judge says, well, come on up, everybody, I want to hear what they are, and one of the points is pretty obviously wrong, and your office should have known that, and yet you let them go forward and you tell them after the opening that they're wrong. Is that what happened? No, Your Honor. Okay. We went on a bench conference. Explain it. Yes, we went on a bench conference, and we had a PowerPoint presentation with just bullets. The bullets said three versions of facts, and I inquired, there are three versions of facts, because I was really surprised that he was going to go into any versions of facts of a witness that had not even testified, going through DA6 reports that were not adopted statements by a witness. He had full knowledge. Yeah, that's a different risk. Yes. The question is the accuracy of one of the points. No, because I had alerted, Your Honor, prior to trial, two weeks before trial, I had filed a motion of intrinsic evidence stating in detail the witness testimonies, what they were going to testify about, and they all clearly put Mr. Sandra Rijo on the shore. Furthermore, on August 29th of 2012, we had a pretrial conference. The day after, the court ordered that Mr. Rijo be brought to court so we would touch bases again on plea negotiations, and that I would go over the evidence with him again and his counsel, and I specifically did, and I specifically told counsel what the versions of my witnesses were. I was able to interview the witnesses close to trial, and I gave a proffer of the accurate evidence of what the witness would have testified, and that is what they all testified. There was overwhelming evidence of Mr. Rijo's participation in this conspiracy, and they were in full knowledge of the right context of the testimony. Any misstatements in the documents were evident from the face of the documents, and I'm sure counsel looked at those. They just chose whatever theory they could rely on, and the fact is, Your Honor, that they were not forbidden in any way to pursue their theory of the case, because indeed, Mr. Rijo's counsel, he cross-examined Freddy Altagracia, the witness, and he asked about the different versions that Freddy Altagracia gave to the government, and he had subpoenaed the agent. The court issued a subpoena for the agent to testify at trial because he had announced that he would put evidence in the case, and he would sit Mr. Rosario, the agent, to testify. The last day of trial, he changed his mind, but it was well within his reach to sit the agent and to cross-examine him on any of the notes that he took and any inconsistencies in the report, so there was no bad faith in this, Your Honor. On the contrary, I gave more information than Rule 16 requires, and I gave every statement to the defense. They are entitled to that information. I gave that information, and they have an obligation to look at the documents and the information that we provide them. Thank you, Your Honor. Thank you. Ms. Ellsworth, two minutes. Just two points. As to the sentencing disparity, my brother counsel mentioned that the disparity at issue should only be considerations of national disparity. I don't think that's the case. We know that's wrong. In the Martin case, this court did recognize that similarity among co-defendants is something that a district court can and perhaps should take into account. Moving to the Brady violation just briefly, I would submit that the argument that we've just heard only underscores the importance of correcting the erroneous information in the DEA-6. The various emphasis on the story that Mr. Altagracia would tell in his testimony about Mr. Reho's role in the offense only led defense counsel to put more weight on the attempted impeachment of Mr. Altagracia through this, up until after the opening, conflicting story that Mr. Altagracia had presumably given the government. So I don't think that the many, many disclosures about what Altagracia was actually going to testify to really change the error here. And stepping back as to when and why this error matters, the defense is entitled to craft its theory of the case based on full and accurate disclosure from the government. And so when the government has put forth a report that contains this kind of a material misstatement, the defense crafted a defense that went in that direction. When everything changed after the opening statement, which, as Your Honor noted, had been previewed for the prosecutor, Mr. Reho's counsel was forced to try and recalibrate his defense after the trial had already commenced. Now, he did his best in so doing, but the government's obligation... They decided not to call in the end the agent whose mistake it supposedly was. They did decide not to call in Agent Rosario, but I think the error is that Mr. Reho's counsel was unable to craft his theory of defense based on full information from the beginning. He had the whole trial ahead of him, and he chose not to call the witness. Again, I think the government's obligation to provide the full